968 So.2d 229 (2007)
STATE of Louisiana
v.
Kenneth R. HARRIS.
No. 2006-KA-1295.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 2007.
*230 Eddie J. Jordan, Jr., District Attorney, David S. Pipes, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant.
(Court composed of Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.
The defendant, Kenneth R. Harris, appeals his conviction for being a convicted felon in possession of a firearm, a violation of La. R.S. 14:95.1.[1] After review of the record in light of the applicable law and arguments of the parties, we affirm the defendant's conviction.
Relevant Facts and Procedural History
On December 23, 2004, New Orleans Police Department (NOPD) Officers Kendrick Bankston and Thomas Felix of the Third District were dispatched in response to a call reporting an armed robbery that occurred in the 200 block of Camp Street. Upon their arrival, the victim provided the officers with a brief description of the robber and the officers drove through the area looking for the perpetrator. At the intersection of Laurel and Josephine Streets, the officers saw the defendant walking down the street in clothes matching the victim's description of the robber's clothes. Officer Felix opened the passenger door of the police unit and directed the defendant to approach. Rather than complying with the request, the defendant backed up and retrieved a handgun from his waistband and then ran away. Officer Felix pursued the defendant on foot while Officer Bankston attempted to intercept him with the police vehicle.
In the 800 block of Adele Street, Officer Bankston parked and, as he exited the vehicle, heard a gunshot. Following the sound of the gunshot, Officer Bankston found his partner, Officer Felix, lying on his back on the ground with the defendant straddling him. Being separated from the two men by a six and one-half foot fence, Officer Bankston immediately called in a signal 108 (police officer's life in danger). As he did so he heard his partner call to him that there was a gun by his foot. Officer Bankston looked down and saw a weapon. Shortly thereafter, several officers *231 from the Sixth District arrived on the scene in response and assisted Officer Felix in subduing the defendant. The gun was subsequently formally seized.
The defendant was arrested and charged with being a felon in possession of a firearm. On March 1, 2005, he was arraigned and entered a not guilty plea on March 1, 2005. On August 16, 2005, the defendant was tried in front of a twelve-person jury.
Both Officer Bankston and Officer Felix testified at trial. On cross-examination, Officer Bankston conceded that when he and his partner first observed the defendant and decided to conduct and investigatory stop, the defendant was simply walking down the street with a female and there was nothing unusual in his behavior. When the defendant took off running, his female companion did nothing. Officer Bankston further testified that he observed the defendant in possession of the handgun, both when he first pulled it out of his waistband and again while he was fleeing from the officers. Officer Bankston admitted that he lost sight of both the defendant and his partner as they ran through a driveway in the new St. Thomas development and, accordingly, did not see the defendant discard the weapon.
Officer Felix's testimony substantially corroborated that of his partner. According to Officer Felix, after he opened the car door to speak with the defendant, the defendant backed up, raised his shirt, and pulled out a weapon. He pursued the defendant on foot on Josephine Street to Annunciation Street and then into a driveway area. When Officer Felix entered the area between two buildings, he quickened his pace in hopes of stopping the defendant from escaping through the driveway but then realized that a fence prevented the defendant from going further. The defendant pointed his gun directly at Officer Felix and Officer Feliz fired his own weapon at the defendant, hitting the building. The defendant then turned around and attempted to climb the fence and, in the process, dropped his weapon onto the ground on the other side. Officer Felix pulled the defendant off the fence and held onto him until other officers arrived to assist him. Officer Felix identified the gun submitted into evidence as the gun he saw the defendant throw over the fence.
Officer Jay Jacquet, stipulated to be an expert in the identification of fingerprints, testified on behalf of the State. Officer Jacquet stated that he compared the fingerprints of the defendant, which he took in court, with fingerprints on the back of an arrest register and another set on the back of a bill of information from case number 445-527 and that the fingerprints obtained from the defendant in court matched those on the back of the arrest register and on the back of the bill of information.
The State also presented the testimony of Suzanne Fourcade, a probation and parole officer for the Louisiana Department of Corrections. Ms. Fourcade testified that she supervised the defendant's probation in connection with a conviction for possession of cocaine and, as part of her duties she informed the defendant of the conditions of his probation, including a prohibition on carrying firearms or dangerous weapons. Ms. Fourcade identified the form the defendant signed indicating he was aware of the conditions.
The State's final witness, Mary Beyer, a crime scene investigator for the NOPD, identified various crime scene photographs that she took on the night of the defendant's arrest, as well as various pieces of physical evidence taken from the scene.
The defense attempted to present Nikema Wright as its first witness, but was not *232 allowed to do so due to the witness's violation of the sequestration order and, according, the sole witness for the defense was the defendant. He stated that on the night of December 23, 2004 he was walking to the store with Nikema Wright when a police car drove up. Officer Felix exited and came toward him, at which point he turned and ran. With Officer Felix in pursuit on foot, the defendant stated that he ran until he came up against a fence. At that point, Officer Felix pulled him off and hit him in the head with his weapon, and the gun discharged. The defendant was told to stay on the ground, which he did. The defendant stated that he suffered injuries that required stitches and staples. The defendant denied ever being in possession of a weapon. He stated that he ran from the police because he was trying not to go to jail just before Christmas.
The jury returned a verdict of guilty as charged and, on January 17, 2006, the court sentenced the defendant to serve ten years at hard labor without the benefit of probation, parole, or suspension of sentence. The court also imposed a mandatory fine of $1,000.00 but suspended payment.
Errors Patent
A review of the record reveals no errors patent.[2]
Discussion
In his sole assignment of error on appeal, the defendant argues that he was denied the constitutional right to present witnesses on his own behalf due to the trial court's sua sponte decision to bar his only witness from testifying due to her alleged violation of the sequestration order.
Pursuant to Article 764 of the Louisiana Code of Criminal Procedure, the exclusion of witnesses is governed by Article 615 of the Louisiana Code of Evidence which provides, in pertinent part:
A. As a matter of right. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
* * *
C. Violation of exclusion order. A court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness.
La.Code Evid. 615.
The purpose of the sequestration article is to assure that a witness will testify as to his or her own knowledge of events and to prevent testimony of one witness from influencing testimony of another. State v. Draughn, XXXX-XXXX, p. 57 (La.1/17/07), 950 So.2d 583, 621. The trial judge, in his discretion, may determine the disqualification of a witness when a rule of sequestration has been violated. Id. This ruling will not be disturbed absent an abuse of the trial court's discretion. Id.
In the instant case, the trial transcript shows that when the defense called Nikema Wright to testify, and prior to any objection by the State, the trial judge ordered the "the sheriff, and the lawyers" to *233 the bench for a conference. The supplemental transcript of the bench conference reflects that the judge inquired of a deputy whether Ms. Wright "was this witness out there talking to the people who had been sitting in the courtroom?" Upon the deputy's affirmative response, the judge stated that the sequestration order had been violated. The judge observed that he had told the women in the courtroom to "keep still" but instead they had been going in and out of the courtroom to tell Ms. Wright what was going on, including the specific details of the police officers' testimony.
The defense counsel argued that the women had been going in and out of the courtroom because they were caring for Ms. Wright's baby. Counsel also contended that the nature of Ms. Wright's testimony was "such that it wouldn't make too much reference to anything that was said prior in here." The trial judge responded that he would not tolerate violations of a sequestration order. In response, to the defense counsel's insistence that he had no knowledge of what had communications occurred between the witness and the courtroom observers, the judge stated that he knew "exactly what they are doing." The judge indicated that he would let the witness testify so long as she did make any reference to the prior witnesses' testimony but at that point one deputy interjected that he personally heard the women tell Ms. Wright the details of one of the officer's testimony regarding the fence and the gate. The second deputy also informed the court that he had also heard this. Based on these additional details, the trial judge determined that Ms. Wright would not be allowed to testify, noting that he would place additional reasons for his ruling on the record later outside the presence of the jury. The supplemental transcript shows that the judge did so, after another bench conference during which the defendant elected to testify over his counsel's advice. The court stated:
Let the record reflect that the testimony indicated there was no one present at the scene where the gun was allegedly discharged and there were at least two people who are friends of the defendant  one came in with a baby and waived [sic] to the defendant and they moved around and exchanged waives [sic] . . . and the information I have from the sheriff's office is that these two ladies had gone outside during the breaks and have not only told Ms. Wright what the witnesses have testified to but have described the area as what is described in the photographs and that is a violation of the sequestration rule.
First, we note that the defense counsel failed to make the requisite proffer of Ms. Wright's testimony to preserve the issue. La.Code Evid. art. 103(2); State v. Watson, p. 20, 844 So.2d at 211. Accordingly, without knowledge of the nature of Ms. Wright's testimony, it is difficult to conclude that the defendant has been materially prejudiced. We can surmise, of course, that Ms. Wright was the woman that the police officers saw with the defendant when they first encountered him walking down the street. However, as noted by the trial judge, there was no indication that Ms. Wright fled the area or followed the defendant when he ran and, accordingly, could only have testified as to the initial approach of the officers, the initial flight of the defendant, and whether she saw him pull a handgun from his waistband when the police first approached.[3] Moreover, the defendant did *234 not indicate in his testimony that Ms. Wright fled with him when he ran from the police. Accordingly, Ms. Wright was unable to offer testimony pertinent to the issue of whether the defendant discarded the weapon.
Clearly, once Ms. Wright was provided with the details of the testimony of both police officers, including the details about the location where the defendant was apprehended, the prosecutor's ability to conduct meaningful cross-examination of Ms. Wright would be seriously compromised if she testified that she followed the defendant and witnesses the entire incident. In addition, the defense counsel's comment about Ms. Wright's testimony was that it would not "make too much reference" to the testimony of the State's witnesses which indicates that she was not a witness to the chase and was not present when the defendant allegedly threw down the weapon. Under these circumstances, it does not appear that the defendant's right to present a defense was seriously impacted by Ms. Wright's disqualification as a witness as she was not in a position to testify to the facts relevant to his actual guilt or innocence.
Furthermore, any testimony would have been cumulative to that given by the defendant. The defendant's explanation that he was on probation and did not want to go to jail before Christmas indicates that he was aware that he was in possession of something that would cause him to be immediately arrested. In light of the facts that there is no indication that the defendant was wanted for a probation violation, the police officers did not discover any contraband in his possession, and the defendant discarded the weapon while fleeing the police, it is difficult to conclude that the jury's decision to reject his testimony that he fled the police for no reason would have been altered by Ms. Wright's testimony.
Finally, the defendant argues that the trial judge committed legal error by raising the sequestration violation on its motion and then excluding Ms. Wright without a specific motion from the State. However, La.Code Evid. art. 615 specifically allows the trial court to impose a sequestration order on its own motion. Moreover, absent a clear legislative prohibition against the trial court doing so, it has the authority to raise the issue of a violation on its own motion and impose the sanction it feels appropriate. Accordingly, the trial court's decision to exclude Ms. Wright as a witness does not constitute reversible error.
Conclusion
The defendant's conviction and sentence is affirmed.
AFFIRMED.
NOTES
[1] The defendant was also charged with violating La. R.S. 14:37.2 relative to aggravated assault on a police officer. That charge is not before this Court as the jury found him not guilty on this count.
[2] The record at lodging did not contain a complete minute entry of trial, but the record was subsequently supplemented with the entry which reflects defendant's presence at jury selection. The entry also reflects that the trial court ordered sequestration of all witnesses.
[3] The defendant testified that he and Ms. Wright were walking from her home to the store; however, he stated that they had not been together prior to eleven p.m.